UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LOUIE ABDILNOUR,<br><br>  Plaintiff,<br><br>  v.<br><br>BLUE CROSS OF IDAHO HEALTH SERVICE INC., an Idaho insurance corporation,<br><br>  Defendant. | Case No. 1:17-cv-00412-BLW<br><br>MEMORANDUM DECISION AND ORDER |

**INTRODUCTION**

Pending before the Court is Defendant's Motion to Dismiss for failure to exhaust administrative remedies (Dkt. 7). The motion is fully briefed and the Court heard oral argument on April 23, 2018. For the reasons explained below, the Court will deny the motion.

**BACKGROUND**

Plaintiff Louie Abdilnour was an employee with Albertson's LLC, and a participant in the Albertson's LLC Health and Welfare Plan (the "Plan"). *Compl.* ¶ 4, Dkt. 1. Defendant Blue Cross of Idaho Health Service, Inc. ("BCI") is an Idaho insurance corporation, which acts as the claims administrator and insurer of the Albertson's LLC Health and Welfare Plan. *Id.* ¶ 5.

On or about April 3, 2015, Plaintiff was transported by air ambulance service from Mercy Medical Center in Williston, North Dakota to Sanford Hospital in Bismarck,

North Dakota. *Id.* ¶ 11-17. On or about May 7, 2015, Plaintiff was again transported by air ambulance service from Mercy Medical Center to Sanford Hospital. *Id.* ¶ 18-22. Valley Med Flight ("VMF") provided the air transport on both occasions. *Id.* ¶ 16-17, 22. Also on May 7, 2015, VMF obtained written authorization from Plaintiff to submit claims for payment for services provided, and to appeal payment denials or other adverse decisions on his behalf. *Pl.'s Resp.* Ex. 1, Dkt. 10-2.

VMF submitted a claim to BCI for $43,648.00 for the April 3 air ambulance transportation, and BCI processed the claim on May 4, 2015. *Def's Br.* at 3, Dkt. 7-1. BCI sent Plaintiff a check for $10,747,76 and an Explanation of Benefits ("EOB") stating that VMF's charges exceeded the allowable amount for the service. *Id.* at 4. VMF submitted a claim to BCI for $43,092.00 for the May 7 air transport, and BCI processed the claim on June 15, 2015. *Id.* at 5. BCI sent Plaintiff a check for $10,670.72 and an EOB stating that VMF's charges exceeded the allowable amount for the service. *Id.*

On July 24, 2015, a representative from VMF sent a letter to the Blue Cross of Idaho Appeals and Grievance Coordinator, carbon copied to the Plaintiff. *Cook Decl.* Ex. A, Dkt 7-2. The letter includes Plaintiff's name and member number, and the date of service, the billed amount, and the claim number for the May 7 claim. *Id.* The letter states "we are APPEALING your decision. We disagree and dispute your payment of $10,670.72." *Id.* The letter states the alleged grounds for the appeal – that the transport was medically necessary, and constituted "pre-emergent services" under the ACA – and that "your member should not be penalized for receiving the necessary medical services .

. . ." *Id.* The letter further states "As a non-contracted provider, we are under no obligation to accept a reduced payment and will not honor any discounted allowable, leaving your member responsible for any unpaid balance." *Id.* The letter appears to only appeal the payment for the second air ambulance transport of May 7, 2015. *See id.* It does not reference the April 3 transport or payment. *See id.*

After receiving the letter, BCI forwarded it on to Blue Cross Blue Shield of North Dakota "because the local Blue Plan is responsible for communications with their local providers rendering services and submitting claims in their state." *Cook Decl.* ¶ 8, Dkt. 7-2. On August 7, 2015, BCBS of North Dakota sent a letter to VMF, stating "The requested claim was reviewed by our reimbursement team. The claim did process correctly according to the current Blue Cross Blue Shield of North Dakota fee schedule." *Sorenson Decl.* Ex. 2, Dkt. 10-4. The letter included Mr. Abdilnour's name, plan number, and a claim number. *Id.* On October 20, 2015, BCBS of North Dakota sent a second letter to VMF, stating "Your request for additional reimbursement was previously reviewed on August 07, 2015 by our reimbursement team and determined to have been paid correctly according to the current Blue Cross Blue Shield fee schedule providers. No additional review will be made." *Sorenson Decl.* Ex. 3, Dkt. 10-4. The letter again included Mr. Abdilnour's name, plan number, and a claim number. *Id.*

On March 28, 2016, BCI received a request from Plaintiff's counsel for records and information related to Mr. Abdilnour's claims for the air transport service rendered on April 3 and May 7, 2015. *Overman Decl.* Ex. F, Dkt. 7-5. Before proceeding, BCI

asked Plaintiff to complete an "Appointment of Authorized Representative Form." *Def.'s Br.* at 6, Dkt. 7-1. On May 10, 2016, BCI provided Plaintiff's Counsel with some of the requested information. *Overman Decl.* Ex. G, Dkt. 7-4.

On February 23, 2017, Plaintiff's Counsel notified BCI that he was representing Plaintiff in "continuing his appeal of BCI's claim determinations" related to the April 3, and May 4, 2015 air transport services. *Overman Decl.* Ex. H, Dkt. 7-4. The letter stated that "the benefits determinations were appealed on July 24, 2015" and that "BCBSND issued notices concerning these appeals on August 7, 2015 and October 20, 205, and denied/failed to resolve further" Mr. Abdilnour's claims. *Id.* On April 19, 2017, BCI denied Plaintiff's appeal as untimely. *Overman Decl.* Ex. I, Dkt. 7-4. BCI did not address, or even acknowledge the July 24 letter in their denial. *See id.*

Plaintiff filed his Complaint in this case on October 3, 2017. *Compl.*, Dkt. 1. The Complaint alleges that BCI breached the terms of its employee welfare benefit plan, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA) § 502, 29 U.S.C. § 1132(a)(1)(B) by failing to provide full coverage for the costs of his medical transport by air ambulance on April 3 and May 7, 2015. *Id.* The Defendants have filed this motion to dismiss on the grounds that Plaintiff failed to exhaust his administrative remedies by timely appealing the claim determination, as required by the Plan. *Def.'s Br.*, Dkt 7-1.

The Plan states:

You have the right to appeal any denied claim. Your appeal must be filed with the Claims Administrator in writing, within 180 days after you receive the written

notice of the reduction or denial . . . . If you have followed these procedures and
you still do not agree with the Claims Administrator's decision about your claim,
you can file suit in federal court. These claims and appeals procedures (except any
external review described below) must be exhausted before any legal action is
commenced."

*Def.'s Br*. at 5, Dkt 7-1. The EOB Mr. Abdilnour received for the May 7, 2015 claim includes the following instructions for appealing a claim decision:

"If you would like to appeal a claim decision, please follow the steps: write a letter
stating the reasons you believe our claim decision was incorrect . . . Send your
letter and all documentation to the Appeals & Grievance Coordinator no later than
180 days after you receive this Explanation of Benefits using the address on page
one of this form. . . . Under section 502(a) of the Employment Retirement Income
Security Act, you may also have the right to file a civil action following the
exhaustion of the complete appeals process."

*Id.* Finally, the Plan states that a participant may authorize "a lawyer or other representative [to] help you with your claim," but that "the Claims Administrator or Plan Administrator may require written authorization to verify that an individual has been authorized to act on your behalf." *Overman Decl.* Ex. A at 41, Dkt. 7-4.

Defendant argues that the July 24, 2015 letter does not constitute an appeal. Because the 180-day window to appeal Plaintiff's claims closed on December 12, 2015, Defendant argues that the March 28, 2016 and the February 23, 2017 communications from Plaintiff's counsel were untimely. Thus, Defendant argues that Plaintiff failed to exhaust his administrative remedies, and that his claim must be dismissed.

## LEGAL STANDARD

"[T]he general rule governing ERISA claims [is] that a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in

federal court." *Diaz v. United Agr. Emp. Welfare Benefit Plan & Trust,* 50 F.3d 1478, 1483 (9th Cir.1995) (citing *Amato v. Bernard,* 618 F.2d 559, 566–68 (9th Cir.1980)). "The administrative exhaustion requirement, while not explicitly in the text of the statute, is 'consistent with ERISA's background, structure and legislative history and serves several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise.'" *Dhamija v. Liberty Life Assurance Co. of Boston*, No. 5:13-CV-02541-LHK, 2013 WL 5689033, at *3 (N.D. Cal. Oct. 16, 2013) (quoting *Diaz*, 50 F.3d at 1483).

Defendants may raise a defense of "failure to exhaust nonjudicial remedies" as an unenumerated Rule 12(b) motion to dismiss "as a matter of abatement." *Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 368–69 (9th Cir. 1988), *overruled on other grounds in Albino v. Baca*, 747 F.3d 11162 (9th Cir. 2014). "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt v. Terhune*, 315 F.3d 1108, 1119–20 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).

District courts have broad discretion in resolving factual disputes in these circumstances. *Ritza*, 837 F.2d at 369. Unlike motions brought under Rule 12(b)(6) and 56, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of

disputed material facts will not preclude the trial court from evaluating for itself the merits of [the] claims." *Id.* (internal citations and punctuation omitted). "The burden of establishing nonexhaustion . . . falls on defendants. *Wyatt*, 315 F.3d at 1112.

There is no "binding Ninth Circuit authority that clearly delineates when a communication following the denial of a claim constitutes an appeal." *See Dhamija v. Liberty Life Assurance Co. of Boston*, No. 5:13-cv-02541-LHK, 2013 WL 5689033 at *4 (N.D. Cal. Oct. 16, 2013). Several courts in this circuit, however, have interpreted ambiguous communications in favor of the participants, so long as the communication is sufficient to put the Plan Administration on notice of the appeal. *See, e.g.*, *id.* (finding that a letter sent "to confirm" a participant's appeal was sufficient to initiate the statutorily guaranteed review process); *Eppler v. Hartford Life & Accident Insurance Co.*, No. 07-4696, 2008 WL 361137 at *11 (N.D. Cal. Feb. 11, 2008) (finding notice of participant's intent to file an appeal created "a duty" to review participant's claim); *c.f. Werner v. Liberty Life Assurance Co.*, 336 Fed. Appx. 676, 677-78 (finding letter stating intent to appeal not sufficient where claimant explicitly asked the administrator not to take action to consider appeal, and notice from administrator back to claimant indicated that both parties understood the letter was not an appeal).

## ANALYSIS

BCI argues that the July 24 letter does not constitute an appeal because it does not explicitly state that the appeal is taken on behalf of Mr. Abdilnour. BCI cites *IHC Health Services, Inc. v. FCH1 LLC* as announcing a bright-line rule that pre-suit communications

from providers must contain such a statement in order to constitute an appeal. *See* No. 2:11-cv-000657-DBP, 2012 WL 5928338 (D. Utah Nov. 27, 2012). In *IHC*, the magistrate judge found that pre-suit communications from IHC, the health care provider, to the Plan Administrator did not qualify as an administrative appeal because "(1) they contain no reference that ICH is exercising any right on behalf of the plan participant; (2) they make no request for an appeal; and (3) they were all sent well outside of the Plan's 180-day deadline for filing an administrative appeal." *Id.* at *5. The Court finds that the reasoning in *IHC* persuasive, but the case is distinguishable, and the holding more nuanced than BCI suggests.

First, the procedural history of *IHC* strongly supports the magistrate's finding that IHC was acting on its own behalf rather than on behalf of the plan participant. IHC believed that it did not have authorization to act on behalf of the plan participant when it communicated with the Plan Administrator. *Id.* at *2. Thus, IHC initially filed suit in state court for breach of contract, and only later brought an action under ERISA. *Id.* Further, IHC was the sole plaintiff in *IHC* and there is no indication that the participant was ever involved. *Id.* Taken together, these facts strongly suggest that IHC's pre-suit communications with the Plan Administrator were in furtherance of enforcing its own contractual rights, rather than the participant's rights under the plan. *Id.* at *2.

Second, two of the independent grounds supporting the magistrate's decision in *IHC* do not apply to this case. There, the magistrate found that IHC's claim failed because the purported appeal was untimely, and did not clearly state that it was an appeal.

*Id.* at *5. Thus, there was no need for the court to dig deeply into whether IHC was acting on behalf of the participant. Here, the July 24 letter was sent well within the 180-day window, and there is no question that it was timely. Further, the letter expressly states, "we are APPEALING your decision." *Cook Decl.* Ex. A, Dkt 7-2 (emphasis in original). Thus, the only question here is whether the July 24 letter adequately informed BCI that it sought to enforce Mr. Abdilnour's rights under the plan.

Finally, the Court finds that the IHC court's analysis was substantially more fact-intensive than BCI suggests. In *IHC* the magistrate relied on three separate factors in holding that IHC's letters did not constitute an appeal under the plan at issue. First, the court found that the letters failed to state that IHC was asserting any rights on behalf of the plan participant. Second, the court found that because IHC believed it was not authorized to assert the participant's rights, it could not claim that the pre-suit letters were intended to assert those rights. Third, the court found that by stating that it would "balance-bill" the plan participant for the remaining amount of the claim, IHC demonstrated that it was acting in a manner adverse to the participant's interests, rather than on his behalf. *Id.* at 5. In other words, the magistrate looked to the totality of the circumstances in determining whether the letters constituted an appeal.

Here, the totality of the circumstances suggest that the July 24 letter constituted an appeal of the May 7 claim determination, on behalf of Mr. Abdilnour. Though the letter does not specifically state that Mr. Abdilnour is exercising his right to appeal, neither does it expressly state that an appeal is brought on behalf of VMF. The letter was carbon

copied to Mr. Abdilnour, however, and states that "we are in receipt of your partial payment," "we disagree with your reimbursement" and "we are APPEALING your decision." *Cook Decl.* Ex. A, Dkt 7-2 (emphasis added). Further, VMF is a non-contracted provider, with no independent right to appeal BCI's claim determination. Thus, it would be unreasonable for BCI to interpret the letter as solely representing the interests of VMF.

Indeed, the Court may reasonably infer that VMF intended to act on behalf of Mr. Abdilnour. The record shows that VMF was authorized to file an appeal on Plaintiff's behalf, and, unlike in *IHC*, there is nothing to suggest VMF was not acting upon that authorization in sending the July 24 letter. In addition, the fact that the appeal letter was sent by a representative from VMF, even though BCI sent the claim check and the EOB to Mr. Abdilnour, should have placed BCI on notice that VMF was coordinating with Mr. Abdilnour in making the appeal.[1] In contrast, IHC received the claim check and EOB directly, making it more likely that IHC was acting independently of the plan participant. *IHC*, No. 2:11-cv-000657-DBP, 2012 WL 5928338 at *1.

Finally, the fact that VMF indicated that Mr. Abdilnour would be left responsible for the unpaid balance of the claim does not transform the letter from an "appeal" on behalf of Plaintiff to an "inquiry" on behalf of VMF. The Court disagrees that such

---

[1] VMF's representative sent the July 24 letter to the address contained in the EOB as directed by the instructions for appealing a claim decision included therein.

language necessarily indicates that the provider is adverse to the plan participant. Rather, the Court finds it reasonable for both the plan participant and his representative to acknowledge the financial consequences of an unsuccessful appeal. This is particularly true here, where Plaintiff's interests were explicitly asserted elsewhere in the letter. *See Cook Decl.* Ex. A, Dkt 7-2 (stating that "your member should not be penalized for receiving the necessary medical services . . . .").

For these reasons, the Court finds that the most natural reading of the letter is that it constitutes an appeal of the May 7 claim determination on behalf of Mr. Abdilnour. BCI should have recognized the letter as such, even without an explicit statement of his appeal rights, or at the very least sent notice to VMF and Mr. Abdilnour of their intention not to treat the letter as an appeal. Where BCI did not provide such notice, they cannot now argue that Mr. Abdilnour failed to timely appeal.

Nor can BCI now claim that the letter did not constitute an appeal because neither VMF or Mr. Abdilnour provided written proof of VMF's authorization to act on Plaintiff's behalf. Although the Plan contains language stating that BCI "may" require such authorization, there is nothing in the record to show that BCI has informed participants that the Plan Administrator requires such authorization, much less that it must be provided up front. Indeed, the record suggests that BCI's practice is not to obtain

such authorization until after being contacted by a third-party representative.[2] Thus, the Court finds that the July 24 letter constitutes a timely appeal of Plaintiff's May 7 claim.

The July 24 letter did not constitute a timely appeal of Plaintiff's April 3 claim, however, as the letter contained no mention of or reference to that claim. But, the Court finds that Plaintiff should be excused from the exhaustion requirements with regards to the April 3 claim.[3] In *Amato v. Bernard*, the Ninth Circuit held that "despite the usual applicability of the exhaustion requirement, there are occasions when a court is obliged to exercise its jurisdiction . . . the most familiar examples perhaps being when resort to the administrative route is futile or the remedy inadequate." 618 F.3d, 559, 568 (9th Cir. 1980). There is simply no reason to believe that BCI would have responded differently had the July 24 letter also incorporated the April 3 claim. Thus, the Court finds that Plaintiff should be excused from his failure to timely appeal the April 3 claim due to futility. *See, e.g.*, *Foster v. Blue Shield of Ca.*, No. CV 05-03324-DDP, 2009 WL 1586039 (C.D. Ca. June 3, 2009) (holding that where prior interactions between the

---

[2] For example, when Plaintiff's counsel first contacted BCI, BCI did not ignore or reject Plaintiff's appeal for failure to provide written proof of authorization. Instead, BCI "requested Plaintiff complete an Appointment of Authorized Representative Form" before proceeding. *See Def.'s Br.* at 6, Dkt. 7-1.

[3] The Court notes that neither party in this action separated out the two claims in their analysis of BCI's motion. Rather, both parties treated the claims identically in their briefing and at oral argument, without differentiating between them for the purposes of exhaustion. Yet, there is no reference to the April 3 claim in the text of the July 24 letter, and there is no evidence in the record to suggest that the letter was intended to include that claim, or that any other letter was sent with regards to that claim.

parties demonstrate that a claim was certain to fail, a plaintiff may be excused on the grounds that appeal would have been futile). Accordingly,

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion to Dismiss (Dkt. 7) is **DENIED**.

DATED: May 4, 2018

                                                             
B. Lynn Winmill
Chief U.S. District Court Judge